UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | :     Case No. 22-CR-257 (CJN) |
| v. | : |
| | : |
| MILOMIR DESNICA, | : |
| | : |
| Defendant. | : |

## GOVERNMENT'S PROFFER OF PROOF
## IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits the following Proffer of Proof in Support of a Plea of Guilty by the defendant to Count One of the Indictment charging him with Conspiracy to Distribute and Possession with Intent to Distribute 50 Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 846 and 841 (b)(1)(B)(viii).

## ELEMENTS OF THE OFFENSE

(1) that an agreement existed between two or more persons to commit the crimes of distribution and possession with intent to distribute a controlled substance; and

(2) that the defendant intentionally joined in that illegal agreement.

The essential elements of the offense of distribution of a controlled substance are:

(1) That the defendant distributed a controlled substance. Distribute means to transfer or attempt to transfer to another person. The government need not prove that the defendant received or expected to receive anything of value in return; and

1

(2) That the defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

The essential elements of the offense of possession with intent to distribute a controlled substance are:

(1) That the defendant possessed a controlled substance;

(2) That the defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently; and

(3) That when the defendant possessed the controlled substance, he had the specific intent to distribute it. Distribute means to transfer or attempt to transfer to another person.

The Indictment also charges that this defendant conspired to distribute and possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine. Thus, in order to make the defendant liable for the sentencing enhancements set out in 21 U.S.C. § 841(b)(1)(B)(vii), the United States would be required to prove beyond a reasonable doubt that the defendant conspired to distribute and possess with intent to distribute a controlled substance, and the amount of the substance involved was 50 grams or more of methamphetamine, as charged in the Indictment. Apprendi v. New Jersey, 530 U.S. 466 (2000).

## PENALTIES FOR THE OFFENSE

(A)   a term of imprisonment of not less than ten years up to life imprisonment;

(B)   a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000;

2

  (C) a term of supervised release of at least 5 years, after any period of incarceration; and,

  (D) a special assessment of $100.

The United States Sentencing Guidelines § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

## FACTUAL PROFFER

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States nor, to the extent it makes representations concerning anything defendant said, is it a recitation of all that defendant said or did.

Had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following:

### The Monopoly Market

Monopoly Market ("Monopoly") was a darknet market launched in 2019. Monopoly was set up as a "hidden service" or "onion service" on the "dark web" also known as the "dark net." The dark web is a part of the World Wide Web accessible only through anonymity-enhancing platforms such as the Tor network, a special network of computers on the Internet designed to conceal users' true IP addresses. Monopoly required that all transactions be conducted in cryptocurrencies, including Bitcoin and Monero.

Monopoly operated much like a conventional e-commerce website: users could browse goods for sale from Monopoly's home page which was organized by category. These categories

included cannabis, ecstasy, opioids, prescriptions, psychedelics, and stimulants. The products were sold by individual vendors with accounts on Monopoly, with Monopoly administrators taking a commission for each completed sale facilitated by the vendor's use of Monopoly.

To operate as a vendor on Monopoly, vendors first had to complete an application. This application was reviewed by the Monopoly administrators using the vendor name "Monopoly" on the Monopoly Market and accompanying Monopoly Forum and the moniker "u/MonopolyOfficial" on the darknet forum Dread. The application requested a variety of information from potential vendors, including descriptions of the items they intended to list, markets the vendors had previously sold on, PGP Public Keys[1] associated with their current and previous vendor identities, and how vendors wished to pay their commissions to the Monopoly administrators. The Monopoly administrators also had to confirm the inventory of the prospective vendor, that is, the vendor actually had the drugs it was requesting to sell. Usually, this was done by the vendor taking photographs of its drug stock. The Monopoly administrators would typically then make comments on these applications such as requesting additional clarifying information, advising that the prospective vendor had been accepted, or denying the application. Denials would typically provide a reason for the denial and instructions on how to improve their chance of being accepted. These vendor applications were posted publicly on Dread and later the Monopoly Forum.

---

[1] PGP or "Pretty Good Privacy" is software that allows for the encryption and decryption of text and files. GPG is an open-source implementation of PGP that is free. PGP/GPG encryption uses two "keys" referred to as the Public Key and the Private Key. A user's Public Key, as the name implies, is meant to be shared widely to allow people to encrypt messages to the user. The recipient then uses their private key to decrypt a message or file that was encrypted using their public key. In practice, this means that Private Keys are not widely shared to maintain their integrity and security, but that Public Keys must be made available to others to facilitate encrypted communication. As part of generating a Public Key and a Private Key, also referred to as a "Key Pair," users may, but are not required to, provide an e-mail address and/or name or moniker that may be incorporated into the header of the Public Key and subsequently visible when the public key is imported into PGP/GPG software.

Users, or buyers, could use a built-in search tool to search by keyword, then filter by price range, origin, shipping country, or a combination of these filters. Monopoly was designed to not have user accounts; instead, orders were identified by order codes and only vendors and the administrators of Monopoly had visible named accounts on the site.

Unlike most other darknet markets, Monopoly operated with a post-payment commission system. The vendor received the full proceeds of sales completed on the market. At regular time intervals agreed upon in the vendor's application, the administrators of Monopoly invoiced the vendor for the amount owed to the administrators based on the sales completed during that timeframe at the agreed-upon rate. The Monopoly administrators typically took 5% of a vendor's sales.

Law Enforcement Action

During its investigation, the FBI confirmed on numerous occasions that Monopoly was used to commit crimes in the United States. Specifically, undercover FBI employees in the District of Columbia, as well as the Eastern District of Virginia, purchased narcotics from the site and received them successfully in the District of Columbia and Virginia. The controlled purchases totaled over 100 grams of actual methamphetamine.

On or about December 28, 2021, a server hosting Monopoly was seized by a foreign law enforcement partner. Pursuant to a Mutual Legal Assistance Treaty (MLAT) request the FBI obtained a forensic image of this server which contained both the market database as well as the forum database. Technical examination of the image revealed several data tables of interest.

Through analysis of one of these tables, which represented the invoices from Monopoly administrators to the vendors on Monopoly, the FBI identified Bitcoin wallets used by the administrators to receive commission payments. Each month, the commission proceeds were

split 50/50 – half of the proceeds remained unspent, while the other half were spent, enabling further investigation.

Although the administrators conducted some cryptocurrency obfuscation transactions, the FBI was able to identify cryptocurrency wallets that received these transactions. In particular, the FBI was able to identify one of these wallets that, in addition to receiving July 2020 Monopoly proceeds, also received two bitcoin deposits from an identified cryptocurrency exchange service which were then used to purchase narcotics on the darknet. On April 6, 2022, this service provided records indicating the bitcoin deposited into the Monopoly administrator's wallet was purchased by defendant Milomir Desnica through an account registered with a Google account. Other identified administrator wallets used cryptocurrency to purchase gaming gift cards that listed the same Google account. A search warrant of this Google account revealed, among other things, that it contained the seed phrase[2] associated with a Bitcoin wallet used by Monopoly administrators to receive commission payments directly from vendors, and other seed phrases for wallets that received half of the split administrator proceeds.

Defendant's Role

Defendant Desnica admits that he began regularly visiting various sites on the darknet or dark web in 2017-2018. He would do so to purchase various types of narcotics.

In 2019 defendant Desnica entered into an agreement with another associate he met on the darknet to develop the website that later became Monopoly. The administrative team divided

---

[2] "Seed phrases," or "recovery seeds," are a string of 12 to 24 words drawn from a specific list of words, that when input into cryptocurrency wallet software, can recover and reconstitute a cryptocurrency wallet. Due to the decentralized nature of cryptocurrency, this enables users to recover their wallet – and any cryptocurrency held in that wallet – in the event of their electronic devices being damaged, destroyed, lost, or stolen. For this reason, they are also closely guarded and kept private.

responsibilities, with Desnica primarily handling back-end coding for Monopoly but also assisting in reviewing and validating vendor applications, handling support tickets on the market, and other administrative functions.. The team communicated with each other through an encrypted mobile application known as Jabber. The team shared access to a variety of accounts used to manage the administration of Monopoly and shared passwords for those accounts. The team split the proceeds from Monopoly equally.

Using another of the Monopoly data tables that represented all orders placed on Monopoly, the FBI filtered for completed sales of methamphetamine on Monopoly shipped to customers in the United States to determine the quantity of methamphetamine sold to individuals in the United States through the market during the time frame of the conspiracy. The FBI determined that approximately 30 kilos of methamphetamine were sold through Monopoly to individuals in the United States. The defendant agrees that this quantity represents the amount of methamphetamine distributed via the market in the United States and that this amount was readily foreseeable to him as one of the administrators of the market. Finally, the defendant admits that the 18,258.60 Euros seized from him, his bag, his residence and his vehicle along with the 866.755 USDT and approximately 0.2023 ETH held in a cryptocurrency wallet on his iPhone (along with any interest that accrued while in custody of the United States) constitute proceeds of the drug conspiracy charge he is pleading guilty to and are therefore subject to forfeiture.

Respectfully submitted,

MATTHEW M. GRAVES

7

UNITED STATES ATTORNEY

BY: _____
NIHAR MOHANTY
Assistant United States Attorney

## DEFENDANT'S ACCEPTANCE

I have read the foregoing Statement of Offense, and I have discussed this proffer fully with my attorney, Mark Rollins, Esquire. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date 11-1-23

Milomir D.
Milomir Desnica
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page of this Statement of Offense with my client, Milomir Desnica, and fully discussed it with my client. I concur in my client's desire to plead guilty as set forth in this Agreement and the Statement of Offense.

Date: 11-1-2023

Mark Rollins, Esq.
Attorney for Defendant